# Supreme Court of Texas

---

No. 23-0956

---

Nejla Kassandra Keyfli Lane,

*Appellant*,

v.

Commission for Lawyer Discipline,

*Appellee*

---

On Appeal from the Board of Disciplinary Appeals

---

**Argued December 4, 2024**

JUSTICE HUDDLE delivered the opinion of the Court, in which Chief Justice Blacklock, Justice Lehrmann, Justice Devine, Justice Bland, Justice Young, and Justice Sullivan joined.

JUSTICE BOYD filed a dissenting opinion, in which Justice Busby joined.

JUSTICE BUSBY filed a dissenting opinion.

Each attorney admitted to practice law in Texas is subject to the disciplinary jurisdiction of this Court and the Commission for Lawyer Discipline (CLD), a committee of the State Bar. *See* TEX. GOV'T CODE § 81.071. Disciplinary proceedings begin upon the CLD's receipt of an

allegation of attorney misconduct. The Rules of Disciplinary Procedure govern the process that unfolds, and one of them—Rule of Disciplinary Procedure 17.06—is the subject of this case.

Rule 17.06(A) prohibits the imposition of discipline for professional misconduct occurring more than four years before the allegation of misconduct is received by the CLD. The issue here is whether and how Rule 17.06(A) operates in "reciprocal" discipline cases, in which a Texas attorney disciplined by another jurisdiction self-reports the foreign jurisdiction's judgment of discipline to Texas, which, in turn, summarily imposes discipline mirroring that imposed by the foreign jurisdiction.

The CLD urges that Rule 17.06(A) is inapplicable and suggests that no statute or rule of limitations governs reciprocal discipline proceedings. Under the CLD's theory, it was therefore proper for Texas to discipline Attorney Nejla Lane in 2023 for sending three intemperate emails to an Illinois federal magistrate judge's chambers in 2017. We reject that reading of Rule 17.06(A) and hold that it applies to reciprocal discipline cases and bars the CLD from imposing discipline in this case. We accordingly reverse the judgment of suspension and dismiss the case.

## I.  Background

Nejla Lane is an attorney who has practiced law for twenty years, having been licensed in Illinois, Michigan, and her current home state of Texas. In 2014, while representing the husband in a contentious divorce proceeding in Illinois, Lane brought another suit in Illinois federal court alleging that the wife violated federal wiretap law by

2

downloading the husband's emails. That case was assigned to Magistrate Judge Sheila Finnegan. The litigation became heated and, after the judge denied Lane's request for additional time to conduct discovery, Lane sent the first of three emails that ultimately would result in her being disciplined by both the Northern District of Illinois and the Supreme Court of Illinois.

Lane sent the first email in April 2017. After the judge denied her motion for an extension of time to depose the wife, Lane emailed an inbox for proposed orders, claiming Judge Finnegan was favoring opposing counsel:

> Today in court no matter what I said to you, you had already made up your mind, and even questioned my sincerity with regard to my preparation for upcoming trial. . . .
>
> [S]ince the beginning you never seem to doubt anything [opposing counsel] says, as you appear to doubt me. Still, I stated to you in open court that "I don't want to be hated" for doing my job, but it sure seems that way, as I never get a break. [Opposing counsel] is the lucky guy who senses same as he can just pick up the phone to call you knowing he will get his way . . . .
>
> Still, it's not fair that my client (and I) is being treated badly for suing his wife/ex wife, and everyone is protecting [the wife] – why? . . . How am I to prove my case if I am not given a fair chance to do my work, properly. I apologize for this message, Judge Finnegan, but I am under a lot of pressure, too, and it's "I" who is being punished here because it's "I" who has to spend endless hours in the office . . . .
>
> Again, my sincere apology and I will adhere to your instructions.

Judge Finnegan replied to all counsel explaining that she does not allow attorneys to email her to argue motions or "share their feelings about my past rulings" and that Lane's email was "improper."

Two months later, Judge Finnegan's law clerk emailed all counsel a copy of the judge's order denying leave for Lane to depose an additional witness. Lane responded with another email to the proposed order mailbox, addressing her email to the clerk. In this email, Lane complained Judge Finnegan had entered an "outrageous" order helping the wife "escape punishment for wrongs she committed." She also asserted that the judge was "violating [her] client's rights." Three days later, Lane sent a third email, again addressed to Judge Finnegan's law clerk and including the proposed order mailbox as a recipient. Lane described the order as "fraudulent," adding that it made her "sick to [her] stomach." In closing, Lane proclaimed: "What goes around comes around, justice will be done at the end!"

Judge Finnegan then ordered Lane to "immediately cease all email communications with the Court (via the proposed order box or otherwise) and with all members of the Court's staff." Judge Finnegan's order described the emails as "highly inappropriate" and stated, "The Court will take further action to address the failure to comply with the Court's directive [in April 2017] and the inappropriate content of counsel's two most recent emails in due course."

After the lawsuit ended, Judge Finnegan reported Lane to the Northern District of Illinois. In January 2018, the Northern District suspended Lane from that court's general bar for six months for violating American Bar Association Model Rules of Professional

4

Conduct 3.5(d), which forbids lawyers from "engag[ing] in conduct intended to disrupt a tribunal," and 8.4(d), which prohibits "conduct that is prejudicial to the administration of justice."

In August 2019, the Supreme Court of Illinois's Attorney Registration and Disciplinary Commission filed a complaint against Lane over the same emails, alleging that Lane violated Rules 3.5(d), 8.2(a), and 8.4(d) of the Illinois Rules of Professional Conduct. Like their ABA counterparts, these rules prohibit "conduct intended to disrupt a tribunal" and "conduct that is prejudicial to the administration of justice."[1]

While the Illinois complaint was pending, Lane self-reported the federal suspension to the Texas State Bar. But the CLD's Chief Disciplinary Counsel, Seana Willing, informed Lane that, although a proposed rule change was under consideration, the Disciplinary Rules

---

[1] The text of the relevant Illinois Rules of Professional Conduct is as follows:

Rule 3.5(d): "A lawyer shall not . . . engage in conduct intended to disrupt a tribunal."

Rule 8.2(a): "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer . . . ."

Rule 8.4(d): "It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice."

ILL. RULES PROF'L CONDUCT R. 3.5(d), 8.2(a), 8.4(d).

5

in effect at the time did not require reporting federal discipline.[2] Texas took no disciplinary action at the time.

The Illinois Supreme Court ultimately imposed a six-month suspension, followed by six months of probation, in January 2023. As required by Disciplinary Rule 8.03(f), Lane reported this suspension to the Chief Disciplinary Counsel the following month, in February 2023. One month later, the CLD filed a petition for reciprocal discipline with the Board of Disciplinary Appeals (BODA), a body that imposes reciprocal discipline and hears appeals in standard disciplinary matters.

Lane answered and asserted several defenses. She claimed that the Illinois judgment was unsupported by evidence, that she had been deprived of due process, and that imposing the same discipline in Texas would be a "grave injustice." *See* TEX. RULES DISCIPLINARY P. R. 9.04(A)–(C). She also alleged that imposing reciprocal discipline would violate the U.S. Constitution's Ex Post Facto Clause. Following a hearing, a divided BODA rejected Lane's defenses and issued a Judgment of Partially Probated Suspension, suspending Lane from practicing law in Texas for six months with a subsequent three-month probation period.

BODA made three relevant conclusions of law regarding Rule of Disciplinary Procedure 17.06(A). BODA first concluded that Lane

---

[2] Lane emailed the State Bar in July 2020, shortly after the Texas Bar Journal published a proposed rule change that would require self-reporting of discipline by a federal court. Disciplinary Rule 8.03(f) was amended in 2021 and now requires attorneys to notify the Chief Disciplinary Counsel of discipline by a federal court or federal agency as well as discipline by another state. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 8.03(f).

waived any limitations issue by failing to plead it in her written response. Next, it concluded that Rule 17.06(A) would not apply to reciprocal discipline cases even absent a waiver. Finally, BODA reasoned that if Rule 17.06(A) applied to reciprocal discipline cases, it would not bar discipline here because the four-year limitations clock started when Lane was disciplined by the Supreme Court of Illinois in 2023, not when she emailed Judge Finnegan's chambers in 2017.

Two BODA members disagreed with the judgment of suspension. Member Jason Boatright concluded that Rule 17.06(A) barred BODA from disciplining Lane because she sent the offending emails in 2017, which was more than four years before the CLD learned of her Illinois suspension in 2023. Another BODA member dissented without opinion.

Lane appealed to this Court. We granted her request for oral argument, and BODA stayed the suspension judgment pending our disposition.

## II. Relevant Law

The Supreme Court of Texas has inherent power to administer and regulate the practice of law in Texas. *Webster v. Comm'n for Law. Discipline*, 704 S.W.3d 478, 490 (Tex. 2024). The State Bar Act provides a statutory framework within which the Court exercises this power. *Id.* at 491 (citing TEX. GOV'T CODE § 81.011(b)). Central to this framework are the Disciplinary Rules of Professional Conduct, which this Court promulgates to "define proper conduct for purposes of professional discipline." TEX. DISCIPLINARY RULES PROF'L CONDUCT PREAMBLE ¶ 10. To complement these rules, the Court also promulgates the Rules of Disciplinary Procedure, which "establish the procedures to be used in

7

the professional disciplinary and disability system for attorneys in the State of Texas." TEX. RULES DISCIPLINARY P. R. 1.02. In interpreting these rules, we apply principles from the statutory-construction context, considering the text as a whole and giving effect to all words and provisions. *In re Caballero*, 272 S.W.3d 595, 599 (Tex. 2008).

This case turns on the applicability and meaning of Rule of Disciplinary Procedure 17.06(A), which prohibits discipline for misconduct that occurred more than four years before the CLD's Chief Disciplinary Counsel receives notice. Before turning to its text, however, some context regarding the overall disciplinary process proves helpful.

Disciplinary proceedings typically begin when the Chief Disciplinary Counsel receives a "Grievance," i.e., a written allegation that an attorney has committed misconduct. *See* TEX. RULES DISCIPLINARY P. R. 1.06(R). In ordinary discipline cases, which are governed by Part II of the Rules, the Chief Disciplinary Counsel investigates the allegation and may classify it as warranting an evidentiary hearing. *Id.* R. 2.10, 2.12. After a hearing and judgment, either side may appeal that judgment to BODA. *Id.* R. 2.23.

In contrast, "compulsory discipline" and "reciprocal discipline" cases are governed by different rules, which are in Parts VIII and IX of the Rules, respectively. Both compulsory and reciprocal discipline cases are summary proceedings insofar as they bypass the process in which a Grievance is classified, investigated, and adjudicated in an evidentiary hearing. Reciprocal discipline proceedings are initiated when the Chief

8

Disciplinary Counsel receives and files another jurisdiction's disciplinary judgment directly with BODA:

> Upon receipt of information indicating that an attorney licensed to practice law in Texas has been disciplined in another jurisdiction, including by any federal court or federal agency, the Chief Disciplinary Counsel shall diligently seek to obtain a certified copy of the order or judgment of discipline from the other jurisdiction, and file it with [BODA] along with a petition requesting that the attorney be disciplined in Texas.

*Id.* R. 9.01. In reciprocal discipline cases, BODA does not conduct an evidentiary hearing on the merits of the allegations because, with few exceptions, the Rules give preclusive effect to the foreign jurisdiction's judgment of discipline:

> A certified copy of the [other jurisdiction's] order or judgment is prima facie evidence of the matters contained therein, and a final adjudication in another jurisdiction that an attorney licensed to practice law in Texas has committed Professional Misconduct is conclusive . . . , subject to the defenses set forth in Rule 9.04 below.

*Id.*

Rule 9.04, which is located in Part IX of the Rules, identifies five potential defenses that may be asserted in reciprocal discipline cases:

A. That the procedure followed in the other jurisdiction on the disciplinary matter was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process.

B. That there was such an infirmity of proof establishing the misconduct in the other jurisdiction as to give rise to the clear conviction that [BODA], consistent with its duty, should not accept as final the conclusion on the evidence reached in the other jurisdiction.

9

C. That the imposition by [BODA] of discipline identical, to the extent practicable, with that imposed by the other jurisdiction would result in grave injustice.

D. That the misconduct established in the other jurisdiction warrants substantially different discipline in this state.

E. That the misconduct for which the attorney was disciplined in the other jurisdiction does not constitute Professional Misconduct in this state.

*Id.* R. 9.04. These defenses must be pleaded, *id.*; notably, none resembles a rule or statute of limitations.

Compulsory discipline proceedings, like reciprocal discipline cases, are initiated by the Chief Disciplinary Counsel directly with BODA. But, unlike reciprocal discipline, compulsory discipline is based on an attorney's conviction of or order of deferred adjudication for an "Intentional Crime." *Id.* R. 8.01, 8.03. That conviction or order is "conclusive evidence of the attorney's guilt." *Id.* R. 8.02. In compulsory discipline cases, BODA is tasked only with determining whether the conviction (or order of probation) involves the same person, whether it involves an Intentional Crime, and the appropriate discipline. *Id.* R. 8.04.

Rule 17.06 appears in Part XVII of the Rules, under the heading "Miscellaneous Provisions." Rule 17.06(A) sets out a general rule prohibiting discipline for misconduct that occurred more than four years before the Chief Disciplinary Counsel receives a Grievance. Its other subsections describe instances in which the general four-year limitations period does not apply. Because the exceptions to

10

Rule 17.06(A) inform its meaning and scope, we quote Rule 17.06 in its entirety:

**17.06. Limitations, Rules and Exceptions:**

A. *General Rule*: No attorney may be disciplined for Professional Misconduct that occurred more than four years before the date on which a Grievance alleging the Professional Misconduct is received by the Chief Disciplinary Counsel.

B. *Exception: Compulsory Discipline*: The general rule does not apply to a Disciplinary Action seeking compulsory discipline under Part VIII.

C. *Exception: Alleged Violation of the Disclosure Rule*: A prosecutor may be disciplined for a violation of Rule 3.09(d), Texas Disciplinary Rules of Professional Conduct, that occurred in a prosecution that resulted in the wrongful imprisonment of a person if the Grievance alleging the violation is received by the Chief Disciplinary Counsel within four years after the date on which the Wrongfully Imprisoned Person was released from a Penal Institution.

D. *Effect of Fraud or Concealment*: Where fraud or concealment is involved, the time periods stated in this rule do not begin to run until the Complainant discovered, or in the exercise of reasonable diligence should have discovered, the Professional Misconduct.

*Id.* R. 17.06. As its text—and its placement in Part XVII, Miscellaneous Provisions—shows, Rule 17.06(A) is generally applicable in all disciplinary proceedings, save for three express exceptions. The first of these is subsection (B), which categorically exempts compulsory discipline cases from Rule 17.06(A)'s application. *Id.* R. 17.06(B). Compulsory discipline cases, like reciprocal discipline cases, do not undergo either the investigation process or a hearing by a court or

11

evidentiary panel. *See id.* R. 8.01, 8.04. But, unlike reciprocal discipline cases, compulsory discipline cases arise only if an attorney commits misconduct so grave that it results in a criminal conviction of or probation for an "Intentional Crime" as that term is defined by the Rules.[3] *Id.* R. 8.01, 8.03. Excepting criminal misconduct from Rule 17.06(A) is consistent with provisions of the Penal Code that make limitations inapplicable to certain serious crimes. *See* Tex. Code Crim. Proc. art. 12.01(1) (excepting crimes such as murder and child sexual abuse from a statute of limitations). But neither text nor logic suggests that reciprocal discipline cases are similarly beyond Rule 17.06(A)'s reach merely because they, like compulsory discipline cases, are summary in nature.

The other two exceptions are not categorical. Rather, they describe two circumstances that justify excepting a disciplinary proceeding from the general rule that the four-year limitations clock begins ticking when the underlying misconduct occurs. Rule 17.06(C) governs prosecutorial misconduct that results in wrongful imprisonment and provides that the four-year clock begins only upon the prisoner's release. Tex. Rules Disciplinary P. R. 17.06(C). Likewise, Rule 17.06(D) delays the start of the four-year time period when an attorney hinders discovery of misconduct through fraud or

---

[3] "Intentional Crime" includes (1) any "Serious Crime" committed with knowledge or intent and (2) "any crime involving misapplication of money or other property held as a fiduciary." Tex. Rules Disciplinary P. R. 1.06(V). "Serious Crime" means "barratry; any felony involving moral turpitude; any misdemeanor involving theft, embezzlement, or fraudulent or reckless misappropriation of money or other property; or any attempt, conspiracy, or solicitation of another to commit any of the foregoing crimes." *Id.* R. 1.06(GG).

concealment. *Id.* R. 17.06(D). Taken together, the three exceptions set forth in Rule 17.06(B)–(D) demonstrate that the Rules' drafters deliberately exempted an entire category of cases—compulsory discipline cases—from Rule 17.06(A)'s reach, but intentionally refrained from excepting reciprocal discipline cases. *See Bexar Appraisal Dist. v. Johnson*, 691 S.W.3d 844, 854 n.9 (Tex. 2024) ("Just as we give meaning to text where it exists, we must too give meaning to its absence."). They also show that the default rule is to start the four-year clock upon the occurrence of the misconduct—otherwise, there would be no need for subsections (C) and (D) to except two scenarios for different treatment, i.e., delayed accrual.

## III. Analysis

We begin by addressing the CLD's argument that Lane waived Rule 17.06(A)'s application by failing to plead it in response to the petition. BODA concluded that pleading was required because the Rules of Civil Procedure require a party to plead a statute of limitations as an affirmative defense in responsive pleadings, TEX. R. CIV. P. 94,[4] and BODA's internal procedures require application of the Rules of Civil Procedure "[e]xcept as varied by these rules and to the extent applicable," BODA INTERNAL PROCEDURAL RULES R. 1.03. We disagree.

Like Rule of Civil Procedure 94, Rule of Disciplinary Procedure 9.04 enumerates certain defenses that must be pleaded in response to a petition seeking reciprocal discipline. But Rule 9.04 is

---

[4] "In pleading to a preceding pleading, a party shall set forth affirmatively . . . statute of limitations . . . and any other matter constituting an avoidance or affirmative defense." TEX. R. CIV. P. 94.

13

silent about the need to plead Rule 17.06(A). BODA's reliance on Rule of Civil Procedure 94 is therefore misplaced as the Rules of Disciplinary Procedure establish their own pleading requirements for reciprocal discipline cases and thus "var[y]" the requirements for a responsive pleading.

We recognize that Rule 17.06(A) at least resembles a statute of limitations, which typically must be affirmatively pleaded to avoid waiver. But the rationale that supports finding limitations to be waived if not raised in a trial court does not apply here. In typical litigation, judicial efficiency forbids a party from presenting issues on appeal that were not properly presented to and ruled upon by a lower court. *See* TEX. R. APP. P. 33.1(a). But this is not a typical appeal—the CLD filed its petition for reciprocal discipline directly with BODA, meaning that BODA was not acting as a court of appeals. Because Rule 9.04, which expressly governs this proceeding, does not require limitations to be pleaded, we are reluctant to find waiver based on the failure to plead. This is particularly true where, as here, BODA plainly was aware of Rule 17.06(A)'s potential application, as evidenced by the discussion of that rule in both the judgment of suspension and Member Boatright's reasoned writing supporting Rule 17.06(A)'s application.[5]

---

[5] We agree with our dissenting colleague that Rule 9.04 enumerates the defenses that must be both pleaded and proved to avoid reciprocal discipline. *Post* at 1–2 (Boyd, J., dissenting). But in contrast to the Rules of Civil Procedure, which expressly classify a statute of limitations as an affirmative defense, TEX. R. CIV. P. 94, we see no indication in the text of the Rules of Disciplinary Procedure that Rule 17.06(A) is such a defense. This omission suggests that Rule 17.06(A) independently constrains BODA from imposing reciprocal discipline *regardless* of whether the rule has been pleaded.

14

Although we conclude there was no waiver, we do not hold that Rule 17.06(A) implicates subject matter jurisdiction such that a final disciplinary judgment could be rendered void for imposing discipline outside Rule 17.06(A)'s four-year window. Rule 17.05 identifies various "mandatory" time periods in the Rules, which do not include Rule 17.06(A), and then states that "[a]ll other time periods herein provided are directory only and *the failure to comply with them does not result in the invalidation of an act or event by reason of the noncompliance with those time limits*." TEX. RULES DISCIPLINARY P. R. 17.05 (emphasis added). Accordingly, a disciplinary judgment is not void merely because the proceeding ran afoul of the four-year limitation in Rule 17.06(A).

Having concluded that Lane did not waive Rule 17.06(A)'s application, we address Lane's contention that Rule 17.06(A) bars the CLD's proceeding against her. The CLD argues, and BODA agreed, that Rule 17.06(A) does not apply because the rule requires discipline to be imposed within four years of a "Grievance" and a reciprocal discipline case involves no "Grievance." We disagree with this cramped reading of the defined term.

A "Grievance" is "a written statement, from whatever source, apparently intended to allege Professional Misconduct by a lawyer . . . , received by the Office of the Chief Disciplinary Counsel." *Id.* R. 1.06(R). In standard discipline cases, the CLD begins the disciplinary process by determining whether a Grievance constitutes a "Complaint." *Id.* R. 2.10. The CLD then investigates the Complaint to determine if there is just cause for discipline. *Id.* R. 2.10, 2.12. If the CLD moves forward, the

15

Complaint may be heard either in a district court or before an appointed evidentiary panel. *Id.* R. 2.15; *see also id.* R. 2.17 (describing the procedure for an evidentiary panel hearing). Decisions by the panel are appealed to BODA, *id.* R. 2.23, and then to this Court, *id.* R. 2.27, 7.11.

Here, the CLD argues that Lane's 2023 email informing the CLD and its Chief Disciplinary Counsel about her Illinois suspension and attaching a copy of the Illinois Supreme Court's judgment was not a Grievance because it was not subject to the classification and investigation process employed in the usual disciplinary proceeding. We disagree and conclude that Lane's 2023 email falls within the scope of Rule 1.06(R)'s definition of a Grievance. The email and the attached judgment are of course "written statements." It is inconsequential that Lane self-reported the misconduct, as a Grievance can derive "from whatever source." And the email and attachments plainly include and incorporate the allegations of Lane's misconduct that led to her suspension in Illinois. In short, there is no requirement that a written statement be classified and investigated under the rules governing typical disciplinary proceedings in order to constitute a Grievance.

The fact that Rule 17.06(B) expressly excepts compulsory discipline from the general limitations rule supports this conclusion. Compulsory discipline, like reciprocal discipline, does not begin with classification and investigation of a Grievance. Thus, under the CLD's logic, Rule 17.06(A) would not apply to compulsory discipline cases either. Yet Rule 17.06(B) expressly excepts compulsory discipline from Rule 17.06(A)'s application, indicating that rule *would* apply but for the exception. Rule 17.06(A) applies to reciprocal discipline cases, but,

16

unlike compulsory discipline cases, reciprocal discipline cases are not excepted. We therefore reject the CLD's argument that Rule 17.06(A) is inapplicable for lack of a "Grievance."[6]

The definition of "Professional Misconduct" also accords with our conclusion that reciprocal discipline against Lane is time-barred. The CLD argues that even if Rule 17.06(A) applies to reciprocal discipline cases generally, it would not preclude the proceedings against Lane because her Professional Misconduct occurred within four years of BODA's judgment of suspension. BODA concluded that, in the context of reciprocal discipline, "Professional Misconduct" refers not to the underlying conduct that resulted in discipline—here, Lane's sending the three emails in 2017—but rather to the Illinois Supreme Court's entry of the judgment of discipline in 2023. In BODA's view, Professional Misconduct "does not occur *until the lawyer is disciplined in another jurisdiction* for misconduct that occurred there" (emphasis added). The CLD echoes this reasoning and argues that Lane's Professional Misconduct occurred in January 2023, when the Illinois Supreme Court

---

[6] BODA and the CLD cite to another BODA decision in which an attorney sought to dismiss a reciprocal discipline petition as time-barred under Rule 17.06(A). Bd. of Disciplinary Appeals, *In re Bruno*, Cause No. 65864, 2021 WL 5543655 (Nov. 2, 2021). Because this Court affirmed BODA's judgment of suspension, *Bruno v. Comm'n for Law. Discipline*, No. 21-0964 (Tex. Sept. 2, 2022), the CLD argues that we should follow BODA's conclusion in that case that Rule 17.06(A) did not apply. This Court's decision to affirm a BODA judgment without a written opinion, however, does not reflect the Court's agreement with the legal conclusions or reasoning reflected in BODA's judgment. *See* TEX. RULES DISCIPLINARY P. R. 7.11 ("The Court may affirm a decision on [BODA] by order without written opinion."). In this sense, affirmance of a BODA judgment resembles the Court's denial of a petition for review.

suspended her. Lane responds that her Professional Misconduct for purposes of Rule 17.06(A) occurred when she sent the emails in 2017 that ultimately led to her discipline in Illinois. We agree with Lane.

The Rules first define "Professional Misconduct" as "[a]cts or omissions by an attorney, individually or in concert with another person or persons, that violate one or more of the Texas Disciplinary Rules of Professional Conduct." TEX. RULES DISCIPLINARY P. R. 1.06(CC)(1). This definition encompasses the conduct for which the CLD initiates standard disciplinary proceedings. In cases of reciprocal discipline, the Rules provide another definition of "Professional Misconduct": "[a]ttorney conduct that occurs in another jurisdiction, including before any federal court or federal agency, and results in the disciplining of an attorney in that other jurisdiction, if the conduct is Professional Misconduct under the Disciplinary Rules of Professional Conduct." *Id.* R. 1.06(CC)(2).[7] The CLD and our dissenting colleague emphasize one phrase in this second definition to insist that Professional Misconduct in reciprocal discipline cases does not occur until it "results in the disciplining of an attorney in that other jurisdiction." We reject this strained reading of the text. The requirement that there be resulting discipline in another jurisdiction is merely a limitation on the scope of

---

[7] Rule 1.06(CC)(2) was amended in 2021 (with similar changes made to Rule 9.01 and Disciplinary Rule 8.03(f)) to add the current phrase "including before any federal court or federal agency." Sup. Ct. of Tex., *Final Approval and Adoption of Amendments to the Texas Disciplinary Rules of Professional Conduct and the Texas Rules of Disciplinary Procedure*, Misc. Docket No. 21-0961 (May 25, 2021). The rule previously limited "Professional Misconduct" to "[a]ttorney conduct that occurs in another state or in the District of Columbia." *Id.*

conduct to which the rules governing reciprocal discipline apply. In other words, Rule 1.06(CC)(2) circumscribes the type of conduct that is *actionable* in Texas, but it does not alter Rule 17.06(A)'s focus, which is on when the misconduct *occurred*. We do not ignore Rule 1.06(CC)(2)'s distinct requirement that misconduct in another jurisdiction be accompanied by discipline before reciprocal discipline may be imposed—indeed, we wholeheartedly agree. But we disagree that this is relevant in interpreting the meaning of Rule 17.06(A).

Subsections (C) and (D) of Rule 17.06, which expressly delay the start of the four-year window so that it begins upon an event other than the occurrence of the attorney conduct itself, also support this reading. *See id.* R. 17.06(C) (the four-year period begins on the prisoner's release, not at the time of prosecutorial misconduct), (D) (the four-year period does not begin until the discovery of misconduct that was concealed).[8] Had the Rules' drafters intended for reciprocal discipline cases to accrue upon a foreign jurisdiction's entry of a judgment of discipline, Rule 17.06(C) and (D) prove that they would have said so expressly.

Other textual clues buttress our conclusion. In the context of compulsory discipline, the Rules separately define "Professional Misconduct" to include "*[c]onviction* of an Intentional Crime, or being placed on probation for an Intentional Crime with or without an adjudication of guilt." *Id.* R. 1.06(CC)(8) (emphasis added). Rather than refer to the conduct that results in a conviction, Rule 1.06(CC)(8)

---

[8] We note that there is no hint of fraud or concealment here, as Lane *twice* self-reported her discipline in other jurisdictions to the CLD, first in 2020 and again in 2023.

19

deliberately defines Professional Misconduct as the later-occurring conviction itself. The Rules could have similarly defined Professional Misconduct in the reciprocal discipline context—by expressly pointing to the later-occurring *order or disciplinary judgment* of another jurisdiction. Instead, the definition of Professional Misconduct in the reciprocal discipline context refers to the *conduct* that results in a judgment of discipline.

Here, Lane's conduct that resulted in discipline by Illinois is readily identifiable: it was sending three discrete emails to a federal magistrate judge and her clerk on three distinct occasions in 2017. This is the conduct that resulted in the discipline imposed by Illinois in 2023, i.e., the Professional Misconduct referred to in Rule 17.06(A). Because that misconduct occurred more than four years before the CLD's Chief Disciplinary Counsel received the Illinois Supreme Court's judgment of suspension in 2023, Rule 17.06(A) forbade the CLD from filing a complaint against Lane with BODA at that time.[9]

Our dissenting colleague argues that, under our interpretation, Lane's judgment of suspension would be timely under Rule 17.06(A) because she first reported her misconduct and the resulting Illinois federal suspension in 2020. *Post* at 7 (Busby, J., dissenting). But while Lane's 2020 report constituted *a* "Grievance," it is not the *operative* Grievance for purposes of Rule 17.06(A). This is because the CLD chose

---

[9] We need not and do not address whether the CLD had authority to file a complaint with BODA based on Lane's self-reporting in July 2020 of her suspension by the Illinois federal court before the 2021 amendment to Rule of Disciplinary Procedure 9.01 expressly authorized reciprocal discipline based on discipline imposed by a federal court or federal agency.

to take no action upon receiving the report of Lane's federal suspension. The CLD decided to discipline Lane only after a second—much later—report of the *same* underlying misconduct, which makes the second report the operative "Grievance" under Rule 17.06(A). The rule neither states nor implies that the limitations period begins on receipt of a Grievance upon which the CLD takes no action. To read Rule 17.06(A) this way would lead to the absurd result that the CLD could impose discipline based on a Grievance received decades after the underlying misconduct so long as some other report about that same conduct was received within four years of the misconduct. *See Carreras v. Marroquin*, 339 S.W.3d 68, 73 (Tex. 2011) ("We . . . interpret statutes to avoid an absurd result."); *Caballero*, 272 S.W.3d at 599 (applying statutory-construction principles when interpreting the Rules of Disciplinary Procedure).

Ultimately, under the CLD's interpretation of the Rules, no limitations period would govern reciprocal discipline cases, and the CLD would be authorized to file a complaint based on stale—even decades-old—misconduct whenever it sees fit. The CLD assures us it would be judicious in exercising its authority to bring cases in perpetuity. While that may be true, the text of Rule 17.06 along with the definitions of "Grievance" and "Professional Misconduct" compel us to reject the CLD's argument.

## IV. Conclusion

Lane was twice suspended for sending admittedly improper emails to an Illinois federal judge and her staff. The CLD sought to discipline Lane for a *third* time in 2023 for the same three emails she

21

sent nearly six years earlier. We hold that Texas Rule of Disciplinary Procedure 17.06(A) applies and bars the CLD from proceeding on the basis of Lane's 2023 report of her discipline by the Supreme Court of Illinois. We therefore reverse BODA's Judgment of Partially Probated Suspension and dismiss the disciplinary proceedings against Lane.

Rebeca A. Huddle
Justice

**OPINION DELIVERED:** June 6, 2025